IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAVANNA SPENCER, | : | CIVIL ACTION NO. **3:CV-12-0616** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOHN WETZEL, *et* al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

Plaintiff, Ravanna Spencer, is an inmate confined at SCI-Frackville.[1]  Plaintiff's original

Complaint, filed *pro se* on April 4, 2012, includes claims alleging Eighth Amendment deliberate

indifference to serious medical needs as well as a Fourteenth Amendment violation of

substantive due process against Defendants John Wetzel, Robert Collins, Michael Lorady,

Anthony Kovalchik and Major Keller, each of whom is an employee of the Pennsylvania

Department of Corrections ("DOC").  (Doc. 1, p. 9).  Defendant Wetzel is the Secretary of the

Department of Corrections. Defendant Collins is Superintendent of SCI-Frackville. Defendant

Lorady is Deputy Superintendent of Facilities Management at SCI-Frackville. Defendant

Kovalchik is Deputy Superintendent for Centralized Services at SCI-Frackville.  Defendant Major

---

[1]We note that Plaintiff Spencer has filed multiple previous actions with this Court. *See* Civil Nos. 06-1099, 07-0101, 07-1021, and 11-2268 (M.D. Pa.).  Each of Plaintiff's previous cases before the Court has alleged variations of improper medical treatment, violations of due process for denial of grievance requests, and unconstitutional conditions of confinement.

Keller supervises facility corrections officers at SCI-Frackville.  (Doc. 1, p. 3).   Plaintiff also filed

Motion to proceed *in forma pauperis*.  (Doc. 6).   We granted Plaintiff's *in forma pauperis*

Motion and directed service of his Complaint on Defendants.  (Doc. 10).

On June 18, 2012, all Defendants filed, through counsel, a Motion to Dismiss Plaintiff's

Complaint,  under Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be

granted.  **(Doc. 18).**   Defendants simultaneously filed their support brief with attached

unpublished court decisions. (Docs. 19 & 19-1 to 19-3).  On July 5, 2012, Plaintiff submitted

his opposition brief in response to Defendants' Motion to Dismiss.[2]  Defendants did not file a

reply brief.

Plaintiff states in his Complaint that he filed a grievance in accordance with DOC ADM

804, #395814,  regarding his present constitutional claim about the night light with the prison,

and that he has fully exhausted his DOC administrative remedies.  (Doc. 1, p. 7).   Defendants

also  recognize  that  Plaintiff's  grievance  was  denied  and  subsequently  appealed  to

Superintendent Collins.   Defendants further state that Plaintiff subsequently appealed to the

DOC Secretary's Office of Inmate Grievances and Appeals.  (Doc. 19, p. 7).   Thus, it appears

as though Plaintiff fully exhausted his DOC administrative  remedies with respect to his present

Eighth Amendment claim.  Also, Defendants do not move to dismiss Plaintiff's Complaint based

on a failure to exhaust defense.

---

[2]On July 18, 2012, we issued an Order granting Defendants' Motion to Stay
Discovery pending the Court's resolution of their Motion to Dismiss, which was then
promptly appealed to the District Court by Plaintiff. On July 31, 2012, the District Court
issued an Order dismissing Plaintiff's objection to our July 18, 2012 Order.

The crux of Plaintiff's Complaint is that Defendants have enforced, and continue to enforce, a policy of confining inmates in the SCI-Frackville Restricted Housing Unit ("RHU") in a state of "constant illumination," which has allegedly contributed to Plaintiff's "deteriorating physical and mental health."  (Doc. 18, p. 1-2).   Plaintiff asserts that the policy Defendants enforce has caused him permanent vision problems, including near-sightedness and temporary blindness, forcing Plaintiff to wear eyeglasses.  (Doc. 1, p. 4).  Plaintiff further maintains that the night light used at Frackville serves no legitimate penological purpose, and that the policy enforced by Defendants serves only to punish Plaintiff and other similarly situated inmates in the Restricted Housing Unit (RHU).  (Doc. 1, p. 6).  He states, in his Complaint, that "Plaintiff personally made Defendant Whetzel (sic) aware of the conditions on 4-2-2012 when he came to see Frackville RHU... [Defendant Wetzel] told me there was nothing he could do which also show (sic) his deliberate indifference."  (Doc. 1, p. 4).

**II. Motion to Dismiss Standard**.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a complaint to be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted. In considering whether a pleading states an actionable claim, the court must accept all material allegations of the Complaint as true, construe the complaint liberally and make reasonable inferences in the light most favorable to the Plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Dismissal of the complaint is appropriate if "Plaintiff has not pled enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007), or alleged facts sufficient to raise a right to relief that rises above mere speculation.

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir. 2007).

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court

stated:

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal
>
> elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
> *Fowler,* 578 F.3d at 210-11.

> The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Banks v. County of Allegheny*, 568 F.Supp.2d at 588-589 (W.D. Pa.).

**III. Discussion.**

Defendants' Motion to Dismiss is based primarily on their assertion that the Courts have consistently concluded prison night lights serve a necessary and legitimate penological purpose and do not constitute cruel and unusual punishment in violation of the Eighth Amendment. Defendants request that Plaintiff's Complaint be dismissed for failure to state a constitutional claim, and that all individual Defendants be dismissed from the case based on their lack of personal involvement with Plaintiff's claim. (Doc. 19, p. 2). Defendants also maintain that Plaintiff's Complaint should be dismissed because the continuous night lighting apparently in place at SCI-Frackville is of a low wattage, is supported by a legitimate penological justification, and thus does not constitute cruel and unusual punishment under the Eighth Amendment. (Doc. 19, p. 3).[3] Defendants contend that the security night lights used in the cells at SCI-Frackville are necessary to enable guards and prison officials to see into the cells at night to ensure inmate safety and, furthermore, that the disruption, if any, caused by night lights is minimal and does not constitute cruel and unusual punishment. (Doc. 19, p. 4). Defendants further maintain that the night light in question is of a sufficiently low intensity that does not interfere with Plaintiff's ability to sleep, and that it has an important penological justification to prevent potential disruptions, including inmate fights, use of contraband, escape plans, and inmate suicide attempts. (Doc. 19, p. 6).

---

[3]Defendants' brief erroneously states that "the wattage of the lights is also minimal and does (sic) constitute cruel and unusual punishment," though we clearly understood the sentence as part of Defendants' argument that low-wattage security night lights do not constitute cruel and unusual punishment.

Defendants cite to multiple cases which, they argue, support their Motion to Dismiss Plaintiff's Eighth Amendment claim and all of the Defendants from the case.  Defendants cite to three Pennsylvania District Court cases to support their Motion, namely, *Bauer v. Sielaff,* 372 F. Supp. 1104 (E.D. Pa. 1974), *Brown v. Martinez,* 2007 WL 2225842 (M.D. Pa. 2007), and *Sims v. Piazza, aff'd in part,* 2012 U.S. App. LEXIS 3491 (3d Cir.  2012).  We discuss these cases in greater detail below.

Defendants further argue  that all named Defendants should be dismissed from the case because their sole personal involvement with Plaintiff's claim stems from denial of Plaintiff's grievance and appeals.  (Doc. 19, p. 2).  Defendants correctly note that rejection of, and failure to properly process, inmate grievances does not give rise to a constitutional violation.  (Doc. 19, p. 7).  *See  Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D. Pa. 2010).

Plaintiff,  in  his  opposition  brief (Doc. 21), argues that he has properly stated an Eighth Amendment claim for cruel and unusual punishment on the basis that the prison conditions at SCI-Frackville with respect to the continuous night light have resulted in "serious deprivation of [his] basic human needs," including his sight, mental well-being, and ability to sleep.  (Doc. 21, p. 2).  Plaintiff contends that "cruel and unusual punishments" encompass punishments which, although not necessarily physical in nature, involve unnecessary and wanton infliction of pain."  *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  Plaintiff further contends that a prison official who knows of, and disregards, such unnecessary and wanton infliction of pain violates the Eighth Amendment.  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

The Court in *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 466 (M.D. Pa. 2010), stated:

> "The Eighth Amendment prohibition against cruel and unusual punishment
> demands that prison officials do not house inmates under conditions that

deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air." *Helling v. McKinney*, 509 U.S. 25, 32 (1993).  However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  No static test determines whether conditions of confinement are "cruel and unusual."  These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society. *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D.Pa 1989).

To establish an Eighth Amendment claim, Mitchell must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir. 1997) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)).  In reviewing this type of claim, courts have stressed the duration of the complaintant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-363.  Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the United States Supreme Court:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991).

In *Carpenter v. Kloptoski*, 2011 WL 995967, *6 (M.D. Pa. 3-17-11), the Court stated:

> An Eighth Amendment violation occurs when the prison official is deliberately indifferent to inmate health or safety and when this act or omission results in the denial of "the minimal civilized measure of life's necessities." *See Farmer,* 511 U.S. at 832 (1994). Therefore, a prison official can be held liable under the Eighth Amendment for denying humane

7

conditions of confinement if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *See id.* at 847, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811. Claims of negligence, without a more culpable state of mind, do not constitute "deliberate indifference." *See Singletary v. Pennsylvania Dept. Of Corrections,* 266 F.3d 186, 193 n. 2 (3d Cir.2001).

Arguing that Plaintiff has not, in any way, been subjected to cruel and unusual punishment, Defendants maintain that the wattage of the night light in Plaintiff's cell is minimal, poses no harm or danger to the Plaintiff, and serves a legitimate penological interest. (Doc. 19, p. 6). Defendants state that "RHU inmates can still sleep at night in spite of the night light. They can place towels or sheets over their eyes, if they wish. The light is so low, that it poses no harm or danger to the inmates." (*Id.*).

We acknowledge the case law cited by Defendants which suggests that low-wattage night lights serve a legitimate penological interest and do not constitute cruel and unusual punishment. However, all the cases cited by Defendants can be distinguished from the present case. Defendants first raise *Bauer v. Sielaff,* 372 F. Supp. 1104, 1109 (E.D. Pa. 1974) for the proposition that "the discomfort of the lights at night do (sic) not constitute a constitutional deprivation." This case can be easily distinguished, however, on the basis that it involved an inmate alleging that his administrative, temporary placement (approximately one week) in the maximum security unit constituted cruel and unusual punishment. *Bauer,* 372 F. Supp. 1104 at 1109. In *Bauer*, Plaintiff only was subjected to different, potentially more aggravating light for the short duration of his administrative confinement in the maximum security unit, which is not dispositive in the current case in which Plaintiff claims that, over the term of his present confinement, the night light present in his cell has exacerbated his injuries and permanently

8

damaged his eyesight.  The facts in *Bauer* are markedly different and potentially less onerous than the circumstances attendant to long-term confinement in an area characterized by constant illumination.  *Id.*

Defendants do cite to two more recent Pennsylvania cases, namely *Brown v. Martinez,* 2007 WL 2225842 (M.D. Pa. 2007), and *Sims v. Piazza,* 2009 WL 3147800 (M.D. Pa.), aff'd in part, 2012 U.S. App. LEXIS 3491 (3d Cir. 2012).[4]  We agree with Defendants that each of the above named cases concludes in their favor that the illumination of cell night lights does not rise to the level of cruel and unusual punishment.  However, each of these cases was decided in response to a Motion for Summary Judgment after the parties had sufficient time to conduct discovery and present evidence, not in response to Motions to Dismiss for Failure to State a Claim under Rule 12(b)(6).  Finally, the remaining cases cited by Defendants are not precedential, as they are drawn from other Circuits and District Courts in other Circuits.

At this stage in the instant case, prior to the opportunity to conduct discovery, we decline to recommend that the Court grant Defendants' Motion to Dismiss.  We stress the Third Circuit has determined that "constant illumination," under certain circumstances, can rise to the level of an Eighth Amendment violation.  *See Bacon v. Minner,* 229 Fed. Appx. 96 (2007)(citing *Keenan v. Hall,* 83 F.3d 1083, 1090-91 (9th Cir. 1996)(constant illumination so that inmate cannot discern day from night and which causes "grave sleeping problems" and other mental

---

[4]We note that this Court's decision in the *Sims* case was affirmed by the Third Circuit Court with respect to granting Defendants' Summary Judgment Motion on inmate Sims' Eighth Amendment claim pertaining to the constant illumination at the state prison from the night light.  The Third Circuit only reversed this Court's decision with respect to the earlier dismissal of inmate Sims' First Amendment retaliation claim.

and psychological problems unconstitutional)).   Thus, at this point in the present case, before Plaintiff has had the opportunity to conduct discovery, it is premature to conclude that the "constant illumination" Plaintiff alleges absolutely does not rise to the level of an Eighth Amendment violation.   Also, at this point, there is no evidence as to the wattage of the bulb used in the night light in Plaintiff's cell and there is no medical evidence showing if the light had any negative effects on Plaintiff's health.   Additionally, there is no evidence in our case that the night lights can serve a legitimate penological interest.

While we recognize the binding authority in support of Defendants' position that low-wattage night and security lights can serve a legitimate penological interest and do not constitute cruel and unusual punishment, we emphasize that those cases binding on this Court have only drawn such a conclusion at the summary judgment stage.  *See, e.g., Brown v. Martinez,*  2007 WL 2225842 (M.D. Pa. 2007), and *Sims v. Piazza, supra*.   It is premature to summarily conclude, prior to the opportunity during discovery to investigate the specifics of the night light used at SCI-Frackville, whether Plaintiff has stated an Eighth Amendment claim upon which relief can be granted.  As mentioned, neither the Plaintiff nor Defendants have  indicated the type or wattage of light bulb used at SCI-Frackville, and  there is no independent verification, beyond Plaintiff's allegation in the Complaint, which we will accept at this stage, that the light remains on for 24 hours per day.   Thus, we find that key relevant factors, such as color and wattage of the night light, daily duration of illumination, location of the light in relation to Plaintiff's living and sleeping space, and whether the light conforms to the standards promulgated by the American Correctional Association, each of which the courts on summary

judgment have previously considered, must still be ascertained. *See Brown*, WL 2225842 (M.D. Pa. 2007). Further, we find that the parties should be allowed to present evidence as to whether the night light caused or exacerbated any of Plaintiff's medical conditions. *See Id*. As a result, we will recommend that the Court deny Defendants' Motion to Dismiss.[5]

Defendants also state that "the Defendants should be dismissed, to the extent that they are being sued on their handling of the Plaintiff's grievance and appeal."[6]

We first note that it is well established that personal liability in a civil rights action cannot be imposed upon a prison official based upon a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003); *Carpenter v. Kloptoski*, 2011 WL 995967, *6 (M.D. Pa. 3-17-11).

Insofar as Plaintiff alleges Defendants violated his constitutional rights with respect to their responses or failure to properly respond to his grievance (#393814) and appeals, we agree

---

[5]We emphasize that our recommendation is limited solely to determining that Plaintiff's allegations could potentially give rise to a meritorious Eighth Amendment claim. We conclude no more than that Plaintiff has alleged a cognizable Eighth Amendment claim. Defendants, of course, are free to renew their present arguments in the form of a Motion for Summary Judgment after the parties have had the opportunity to conduct discovery.

[6]We note, again, that Defendants' brief is unclear as to which Defendants should be dismissed from the Complaint based on lack of personal involvement. Defendants' brief argues that "Defendants Klopotoski and Mosier should be dismissed, to the extent they are being sued based on their denial of the Plaintiff's grievance and appeal." (Doc. 19, p. 7). Neither Klopotoski nor Mosier is, at any point, named as a Defendant in Plaintiff's Complaint. We think that Defendants' brief meant to refer to Defendants Wetzel and Collins, each of whom occupies a supervisory position with the DOC. We also address, below, whether any Defendants can be dismissed for lack of personal involvement.

with Defendants and find that Plaintiff has failed to implicate a constitutional right.  Defendants'

alleged failure to properly investigate and respond to  Plaintiff's administrative remedy request

and his appeals is not sufficient to name these DOC officials as Defendants in this civil rights

action.  *See White v. Bledsoe*, 2011 WL 2292279, * 6 (M.D. Pa. 6-8-11) ("Participation in the

after-the-fact review of a grievance or appeal is not enough to establish personal involvement.")

(citations omitted); *Lyons v. Beard*, 2009 WL 604139, *5 ("[The Plaintiff inmate's] dissatisfaction

with responses to his grievances does not support a constitutional claim.").

      The law is well-settled that inmates do not have a constitutional right to a grievance

process, and that naming the supervisory Defendants based only on their responses to an

inmate's grievance and appeals will subject these Defendants to dismissal.  *Bartelli v. Jones*, 231

Fed. Appx. 129, 132 (3d Cir. 2007) ("a state grievance procedure does not confer any

substantive constitutional right upon prison inmates.") (citation omitted); *O'Connell v. Sobina*,

2008 WL 144199, * 17 (W. D. Pa.);  *Jones v. North Carolina Prisoners' Labor Union, Inc.*  433

U.S. 119, 137-138 (1977).  This very Court has also recognized that grievance procedures are

not constitutionally mandated.  *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p.

18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8,

2005) (Non-Precedential).  Even if the prison provides for a grievance procedure, as the DOC

does, violations of those procedures do not amount to a civil rights cause of action.  *Mann v.

Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*,

886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995).  *See also Burnside v.

Moser*, Civil No. 04-2485 (12-16-04 Order, p. 3, J. Muir, M.D. Pa.) (Even "[i]f the state elects to

provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted) affirmed  138 Fed. Appx. 414 (3d Cir. 2005); *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D. Pa. 2010).   Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra.*

Thus, we agree with Defendants that they can potentially be dismissed from the case if their only personal involvement with Plaintiff's claim was in responding to his grievance. In *O'Connell v. Sobina*, 2008 WL 144199, *21 (W.D. Pa.), the Court stated:

> Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. *Rode*, 845 F.2d at 1207.  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.  See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).  Moreover, to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations.  *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

At this early stage in Plaintiff's suit, we will recommend that the Court grant, in part, Defendants' Motion to Dismiss with respect to Defendant Wetzel, the Secretary of the Pennsylvania Department of Corrections, based on a lack of sufficient personal involvement with Plaintiff's claim. We conclude that Defendant Wetzel, who clearly occupies a supervisory capacity over the entire Pennsylvania corrections system and has little contact with individual inmates or even with individual corrections officers, lacks sufficient personal involvement with

Plaintiff's Eighth Amendment claim to be named as a Defendant.   In fact, in the *Sims* case, this Court dismissed Defendant Beard, the former DOC Secretary, prior to discovery based on Beard's lack of personal involvement with inmate Sims' identical Eighth Amendment claim. Notwithstanding Plaintiff Spencer's assertion to the contrary, Plaintiff's alleged brief conversation with Secretary Wetzel during his visit to SCI-Frackville on April 2, 2012, in which Plaintiff mentioned his grievance about the nuisance of the night light, does not give rise to any liability on the part of Defendant Wetzel.  Defendant Wetzel's mere perceived indifference to Plaintiff's complaint, based on his alleged statement that "there was nothing he could do," does not remotely approach the level of deliberate indifference required for liability with respect to an Eighth Amendment claim. (Doc. 1, p. 4).

The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002);  *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). However, based on well-settled law, we find futility in granting Plaintiff leave to amend his pleading as against Defendant Wetzel; thus, we will recommend that Plaintiff's Complaint as against Defendant Wetzel be dismissed with prejudice.

To the extent that remaining Defendants Collins, Lorady, Kovalchik and Keller request to be dismissed from the Complaint, we will not recommend that the Court dismiss these Defendants at this early stage of the case.  Prior to affording Plaintiff the opportunity to conduct discovery, it is premature to conclude that none of the remaining Defendants named in

Plaintiff's Complaint was personally involved with his  Eighth Amendment claim and with implementing the SCI-Frackville policy related to the night light. Thus, we recommend that the Court grant Defendants' Motion with respect to Defendant Wetzel, and that the Court  deny Defendants' Motion with respect to Defendants Collins, Lorady, Kovalchik, and Keller.[7]

## IV. Recommendation.

Based on the foregoing, it is respectfully recommended that Defendants' Motion to Dismiss **(Doc. 18)** Plaintiff's Complaint as against Defendants  Collins, Lorady, Kovalchik and Keller be denied, and that Plaintiff be afforded the opportunity to conduct discovery. It is also recommended that Defendants' Motion to Dismiss **(Doc. 18)** be granted with respect to Defendant Wetzel and that Wetzel be dismissed from the case, with prejudice, based on his lack of personal involvement with Plaintiff's claim.

We  also  recommend  that  the  case be remanded to the undersigned for further proceedings.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 13, 2012**

---

[7]We note that our recommendation is limited solely to determining that Plaintiff's allegations could potentially give rise to a meritorious Eighth Amendment claim against Defendants Collins, Lorady, Kovalchik and Keller.  We conclude no more than that Plaintiff has alleged a cognizable Eighth Amendment claim with regard to the constant use of the night light. As indicated above, Defendants will be able to renew their present arguments after Plaintiff has had the opportunity to conduct discovery *via* a summary judgment motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAVANNA SPENCER, | : | CIVIL ACTION NO. **3:CV-12-0616** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| | : | |
| Defendants | : | |

      **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 13, 2012.**

      Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis
> of that record.  The judge may also receive further evidence, recall
> witnesses or recommit the matter to the magistrate judge with
> instructions.

Failure to file timely objections may constitute a waiver of any appellate rights.


_____ **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: August 13, 2012**