# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAVANNA SPENCER,<br><br>        Plaintiff<br><br>v.<br><br>JOHN WETZEL, et al.,<br><br>        Defendants | CIVIL ACTION NO. 3:12-CV-00616<br><br>(KOSIK, J.)<br>(MEHALCHICK, M.J.) |

## **REPORT AND RECOMMENDATION**

Plaintiff, Ravanna Spencer, is an inmate formerly incarcerated at the State Correctional Institute at Frackville ("SCI-Frackville"). He is currently incarcerated at the State Correctional Institute at Graterford ("SCI-Graterford"). On April 4, 2012, Spencer filed this action, *pro se*, pursuant to 42 U.S.C. § 1983 alleging claims pursuant to the Eighth and Fourteenth Amendment against employees of the Pennsylvania Department of Corrections, stemming from the Defendants' use of a night/security light. Specifically, Spencer asserts that Defendants violated his Eighth Amendment rights by being deliberately indifferent to the effects of the light on his health, and that they violated his Fourteenth Amendment rights by enforcing the twenty-four hour lighting policy. (Doc. 1). Pending before the Court is Defendants' motion for summary judgment. (Doc. 54).

I. **BACKGROUND AND PROCEDURAL HISTORY**

Spencer brings this claim against five employees of the Pennsylvania Department of Corrections ("DOC"), namely, the Secretary of the Department of Corrections John Wetzel;[1] Superintendent of SCI-Frackville Robert Collins; Deputy Superintendent of Facilities Management at SCI-Frackville Michael Lorady; Deputy Superintendent for Centralized Services at SCI-Frackville Anthony Kovalchik; and Major of the Guard Brian Keller. (Doc. 1, Compl. ¶¶ 4-10).

Spencer was incarcerated at SCI-Frackville from August 23, 2010, to September 24, 2012. (Doc. 57, Spencer Dep. at 11). He was in the Restricted Housing Unit ("RHU") for most of that time. (Doc. 57, Spencer Dep. at 11). At issue in this case is a night/security light which contains one nine (9) watt light bulb. (Doc. 55, Def. Statement of Facts ¶ 40). The light remains on 24 hours a day. (Doc. 57, Spencer Dep. at 15). Each cell in the RHU contains a light fixture with two 28 watt fluorescent light bulbs and one nine watt fluorescent bulb for the security light. (Doc. 57, p. 56-57; Collins Declaration); (Doc. 57, p. 64; Lorady Declaration). RHU inmates cannot control the security lights in their cells and there is a light switch outside the cells which only corrections officers can control. (Doc. 1, Compl. ¶ 11). Inmates cannot cover or modify the lights, and inmates cannot cover their faces during count. (Doc. 57, p. 64; Lorady Declaration). Spencer states that the security light was above his desk, on the wall opposite his bed and that it originally had a clear panel. (Doc. 57, Spencer Dep. at 12). On June 25, 2012, a work order was

---

[1] Defendant John Wetzel was dismissed from this action pursuant to Defendants' Motion to Dismiss. (*See* Doc 26; Doc. 32).

issued for Spencer's cell and the bottom clear panel of the light was removed and replaced with an opaque panel. (Doc. 57, p. 65; Lorady Declaration; *see also* Doc. 57, Spencer Dep. at 16).

Spencer testified in his deposition that the security light deteriorated his vision and gave him headaches. (Doc. 57, Spencer Dep. at 14). In Spencer's Complaint, he alleges that the constant illumination from the security light has caused him deteriorating "physical and mental health," including temporary blindness "for seconds at a time" and white spots in the corners of his eyes. (Doc. 1, Compl. ¶ 13). He also contends that the night light caused him to be permanently near-sighted and he now has to wear eyeglasses. (Doc. 1, Compl. ¶ 13). Spencer also alleges sleeping problems, the inability to concentrate, agitation and other conditions which he attributes to the RHU security light. (Doc.1, Compl. ¶ 15). Spencer avers that the night light serves no legitimate penological purpose because Defendants do not need to see into the cells 24 hours a day. (Doc. 1, Compl. ¶ 16).

Spencer has also alleged that he informed Defendants of this problem though the grievance process. (Doc. 1, Compl. ¶ 15). He first brought this issue up to the Program Review Committee on December 29, 2011. (Doc. 57, Spencer Dep. at 17-18). Spencer testified that before bringing this lawsuit, he sent approximately five request slips concerning the light. (Doc. 57, Spencer Dep. at 19). Spencer filed a formal grievance in January 2012 regarding the security light. (Doc. 1).

On April 4, 2012, Spencer filed a complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). Discovery in this matter was completed on February 15, 2013. (Doc. 42). On March 27, 2013, Defendants filed a motion for summary judgment (Doc. 54), along with a statement of material facts (Doc. 55) and supporting exhibits. (Doc. 57). On April 1, 2013, Defendants filed their brief

in support of their motion for summary judgment. (Doc. 58). On June 24, 2013, Spencer filed a brief in opposition to Defendants' motion (Doc. 63) along with supporting documents (Doc. 64) and an opposing statement of material facts. (Doc. 65). On July 9, 2013, Defendants filed a reply brief. (Doc. 66).

II. **DISCUSSION**

    A. **STANDARD**

To prevail on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury ... could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d

Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### B. EIGHTH AND FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE CLAIM[2]

Prison officials violate the Eighth Amendment when: 1) their act or omission results in a denial of the "minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); and 2) they have a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). There must be "more than [an] ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan,* 511 U.S. 825, 835 (1994) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Although the Constitution "does not mandate comfortable prisons ... neither does it permit inhumane ones," *Farmer*, 511 U.S. at 832 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349

---

[2] Spencer claims the Defendants violated his right to substantive due process under the Fourteenth Amendment when they enforced the twenty-four hour lighting policy. (Doc. 1). Spencer's claim pursuant to the Fourteenth Amendment is the same as his Eighth Amendment claim, and therefore that claim must be brought pursuant to the more explicit constitutional amendment. *Ordonez v. Yost*, 289 Fed. Appx. 553, 555 (3d Cir. 2008); citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L.Ed.2d 43 (1989). As such, the Court analyzes his deliberate indifference claim under the Eighth Amendment standard. *See Cunningham v. Doe,* 3:12-CV-0934, 2012 WL 3879245 (M.D. Pa. Aug. 13, 2012); *report and recommendation adopted*, 3:12-CV-934, 2012 WL 3879233 (M.D. Pa. Sept. 6, 2012).

(1981)). "[T]he treatment a prisoner receives in prison and the condition under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). At minimum, prison officials must take reasonable measures to guarantee the safety of the inmates. *Hudson v. Palmer,* 468 U.S. 517, 526–527 (1984). The Eighth Amendment also "prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain.'" *Rhodes,* 452 U.S. at 346 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes,* 452 U.S. at 346 (quoting *Gregg v. Georgia,* 428 U.S. 153, 183 (1976)); *Estelle v. Gamble,* 429 U.S. 97, 103 (1976).

Not all harms violate the Eighth Amendment, however. *See Farmer,* 511 U.S. at 834. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious,' ... [it] must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer,* 511 U.S. at 834 (internal citations omitted). Proving that one has been deprived of the minimal civilized measures of life's necessities requires proof that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaugh,* 112 F.3d 703, 709 (3d Cir. 1997). Second, the prison official must have a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834. "In prison-condition cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer,* 511 U.S. at 834.

With respect to Eighth Amendment claims based upon prison lighting conditions, the Court of Appeals for the Third Circuit has stated:

> "[T]he Eighth Amendment prohibits punishments which ... involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the

> severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (internal citations and quotations omitted). Included among unnecessary and wanton inflictions of pain are those punishments completely without penological justification. *Id.* Courts have held that causing inmates to suffer physical and psychological harm by living in constant illumination is without penological justification. *See, e.g., Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir. 1996) (considering a claim from a prisoner who suffered grave sleeping and other problems because of large fluorescent lights directly in front of and behind his cell that constantly illuminated his cell 24 hours a day in such a way that he could not distinguish day from night.) However, courts also have concluded that security lights that are similar to night lights and that provide only enough light for officers to conduct nighttime security checks do not impinge on a prisoner's constitutional rights. *See, e.g., Wills v. Terhune*, 404 F.Supp.2d 1226, 1231 (E.D.Cal. 2005); *King v. Frank*, 371 F.Supp.2d 977, 985 (W.D.Wis. 2005) (rejecting a claim based on light from a 9–watt bulb that allowed correctional officers to see prisoners at night). Continuous lighting has been held to be permissible and reasonable in the face of legitimate penological justifications, like the need for security and the need to monitor prisoners. *See O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987); *see generally Turner v. Safely*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

*Sims v. Piazza,* 462 Fed. Appx. 228, 232 (3d Cir. 2012).

The United States District Court for the Middle District of Pennsylvania has held that continuous exposure to low wattage night time security lighting may be permissible based on legitimate penological interests, such as prison security concerns. *See Brown v. Martinez*, 2007 WL 2225842 (M.D. Pa. July 31, 2007) (Vanaskie, J.); *Sims v. Piazza*, 2011 WL 3664797 (M.D. Pa. Aug. 19, 2011) (Kosik, J.), *aff'd,* 462 Fed. Appx. 228 (3d Cir. 2012); *Mable v. Beard*, 2013 WL 2435295 (M.D. Pa. June 4, 2013) (Mannion, J.); *Stewart v. Beard*, 2010 WL 3155343 (M.D. Pa. July 30, 2010) (Caputo, J.), *aff'd,* 417 Fed. Appx. 117 (3d Cir. 2011).

In this case, Spencer alleges that the security light at SCI-Frackville caused him several ailments. The light in question is a nine (9) watt bulb. (Doc. 55, ¶ 40). This amounts to minimal illumination when compared with other cases that have found no constitutional violation with regard to night lights. *See Brown v. Martinez*, 2007 WL 2225842, at *8 (M.D. Pa. July 31, 2007)

7

("continuous exposure to low wattage (15-watts) night time security lighting may be permissible based on legitimate penological interests, such as prison security concerns"); *Wills v. Terhune*, 404 F. Supp. 2d 1226, 1229-1231 (E.D. Cal. 2005) (exposure to 24 hours of 13-watt security bulb did not constitute cruel and unusual punishment in absence of evidence of "grave sleeping problems" or other harm); *King v. Frank*, 371 F. Supp. 2d 977, 984–85 (constant exposure to a 9-watt fluorescent light which allows prison officials to observe inmates at night did not violate Eighth Amendment standards).

Further, the record establishes that there are legitimate security reasons for having the security lights on during the night, such as observing the inmates and aiding the officers in seeing inside the cell during their hourly tours of the housing unit. (Doc. 55, ¶¶ 27, 34, 41). Although Spencer alleges that there is no penological reason for the night light being on, and there are better alternatives to keeping the light on at all times during the night, such as using a flashlight during rounds (Doc. 1, ¶ 18), a "prison's internal security is peculiarly a matter [for] the discretion of prison administrators." *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 467 (M.D. Pa. 2010) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Considering Defendants' compelling security needs, combined with the broad deference given prison officials in executing policies and practices, the Court finds that Defendants have presented a legitimate penological reason for implementing the security light system. *See Sims*, 462 Fed. Appx. at 233 (finding prison officials' security reasons for the night light provided a legitimate penological justification).

Moreover, Spencer offers no evidence that he suffered sleeping problems or any medical or psychological problems caused by the security light policy. Spencer admits that he does not have an expert witness to testify that the light caused his headaches. (Doc. 57, Spencer Dep. at 31). Spencer has only offered his own conclusions to establish that the light system has caused him physical and mental harm. "Plaintiff's own conclusions *sans* any expert medical evidence is not sufficient to show that the night light caused him any physical and mental harm as he alleges." *Sims v. Piazza*, 2011 WL 3664469, at *11 (M.D. Pa. Jan. 31, 2011). Spencer presents his own conclusions; however, this alone does not establish that the light was the cause of his ailments. *See Sims*, 462 Fed. Appx. at 233.

Additionally, Defendants were not deliberately indifferent to Spencer's health or safety. As indicated above, "the lack of credible medical evidence showing harm to Plaintiff combined with the minimal illumination given off by the [security] light system, and the legitimate penological interest, establish that Defendants were not deliberately indifferent to Plaintiff." *Sims v. Piazza*, 2011 WL 3664797, at *9 (M.D. Pa. Aug. 19, 2011).

### C. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants contend that Spencer failed to exhaust his available administrative remedies before filing a federal lawsuit pursuant to 42 U.S.C. § 1997e(a). In this case, Spencer appealed to final review a grievance concerning the RHU lighting. In the grievance, Spencer states that he contacted Defendants Collins, Kovalchik and Keller regarding the lighting issue. The grievance does not mention Defendant Lorady by name. The grievance also does not allege that the named Defendants were involved with the RHU lights. Thus, Defendants argue Spencer is in procedural default.

The Court of Appeals for the Third Circuit has discussed the components of a proper grievance. *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Under *Spruill,* if the identities of Defendants were "facts relevant to the claim" then it was mandatory for Plaintiff to name them in his grievance; if they were "persons who may have information" or with whom Plaintiff made "attempts to resolve the matter informally" then Plaintiff was required to identify them if practicable; and if they did not fall into any of these categories then Plaintiff was not required to identify them at all. *See* Spruill, 372 F.3d at 234.

Because it is recommended that the Court grant Defendants' motion for summary judgment based on Spencer's failure to establish an Eighth Amendment violation, whether Spencer's grievance procedure had a procedural default is moot.

III. **RECOMMENDATION**

Based on the foregoing, it is recommended that the Court grant Defendants' motion for summary judgment. (Doc. 54).

BY THE COURT:

Dated: December 20, 2013

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAVANNA SPENCER, | |
| Plaintiff | CIVIL ACTION NO. 3:12-CV-00616 |
| v. | (KOSIK, J.) |
| | (MEHALCHICK, M.J.) |
| JOHN WETZEL, et al., | |
| Defendants | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 20, 2013**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: December 20, 2013

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**